Case 4:08-cv-00219-RH-WCS Document 27-5 Filed 05/12/08 Page 1 of 14

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FLORIDA J.A.I.L. 4 JUDGES, FLORIDA DIVISION
OF ELECTIONS COMMITTEE #35025,

                    PLAINTIFF,

VS.

THE FLORIDA BAR, THE FLORIDA SUPREME
COURT, CHIEF JUSTICE R. FRED LEWIS, JUSTICE
CHARLES T. WELLS, JUSTICE HARRY LEE
ANSTEAD, JUSTICE BARBARA J. PARIENTE,
JUSTICE PEGGY A. QUINCE, JUSTICE RAOUL G.
CANTERO, AND JUSTICE KENNETH B. BELL,

                    DEFENDANTS.

_____/

Case. No.: 08-cv-20533-Altonaga
Magistrate Judge Turnoff

**PLAINTIFF'S MOTION FOR TEMPORARY
INJUNCTION AND EXPEDITED LIMITED
DISCOVERY**

      Plaintiff, Florida J.A.I.L. 4 Judges, Florida Division of Elections Committee #35025,

pursuant to (i) the anomalous jurisdiction of this Court and (ii) due process rights to discovery[1],

moves for temporary injunctive relief enjoining Defendant The Florida Bar to (i) halt any activities

related to Plaintiff's "The Judicial Accountability Law" and (ii) provide expedited limited discovery,

and for grounds in support states:

**I.      FACTUAL BACKGROUND**

      The essence of the contemporaneously filed Complaint is that Defendant The Florida Bar

is engaging in improper political activity. That assertion is based upon the limited publically

released information found in the four Florida Bar News articles attached to the Complaint. Clearly,

a great deal more than is presently known by Plaintiff is going on at Defendant The Florida Bar if

---

[1]    "Although the Due Process Clause has little to say regarding the amount of discovery which
the parties must be afforded . . . it does speak to the balance of forces between the accused and his
accuser." *Wardius v. Oregon*, 412 U.S. 470, 474 (1973).

(i) a staff person is monitoring Plaintiff's activities and (ii) the Defendant The Florida Bar Board of Governors is flying in consultants to school Defendant The Florida Bar as it effectuates its campaign against Florida J.A.I.L. 4 Judges.

## II.     TEMPORARY INJUNCTIVE RELIEF

A plaintiff must establish the following prerequisites in order to receive a temporary injunction: "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; (4) that the injunction, if issued, would not be adverse to the public interest." *Sofarelli v. Pinellas County*, 931 F.2d 718, 723 (11th Cir.1991).

### A.     THERE IS A SUBSTANTIAL LIKELIHOOD THAT PLAINTIFF WILL ULTIMATELY PREVAIL UPON THE MERITS

The merits of Plaintiff's claims for declaratory relief against the Defendant The Florida Bar is such that Plaintiff is likely to prevail upon the merit under one or all of the following four theories.

#### 1.     THE FLORIDA BAR USURPS POLITICAL POWER

The necessary and first inquiry in any suit challenging the authority of a government agent – here Defendant The Florida Bar – to take certain actions is whether such actions were among those delegated to the government by the People in the first instance by a specific enumeration. Plainly, the Florida Constitution, Article I, §1 states "All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people." Likewise, the Ninth Amendment to the United States Constitution similarly states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

Case 4:08-cv-00219-RH-WCS  Document 27-5  Filed 05/12/08  Page 3 of 14

From these bedrock principles arises the uncontested *maxim* that to the government certain powers were ceded and that any action by the government outside those ceded powers was *void ab initio*.[2]  "'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*,  118 U.S. 425, 442 (1886)).

Here, the only authority granted by the People regarding attorneys is found at Article V, §15, which states: "The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."  Hence, the limited power ceded to this Court from the People permits this Court to only regulate (i) admission and (ii) discipline of persons admitted to practice law.

However, from this limited grant of power, Defendant Florida Supreme Court has **usurped** the additional political power to create – **as its official "arm"**[3] – Defendant The Florida Bar whose purpose has been greatly expanded by Defendant Florida Supreme Court beyond the limited grant of regulating attorney admission and discipline to: "inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence."  Moreover, once extra-constitutionally expanded, Defendant Florida Supreme Court then mandated that every attorney admitted to practice must be a member.  Rules Regulating the

---

[2]     "Those who fought in the American Revolution and adopted the Constitution and the Bill of Rights included persons of widely varying religious, political, and moral views. They were moved by the desire to establish limited government and to enshrine certain fundamental personal rights as immune from governmental infringement." *Department of Educ. v. Lewis*, 416 So.2d 455, 463 (Fla. 1982).

[3]     "The Supreme Court of Florida by these rules establishes the authority and responsibilities of The Florida Bar, an official arm of the court."  Introduction, Rules Regulating the Florida Bar.

Florida Bar, Rule 1-3.1.

Thus, Defendant The Florida Bar has become an engine of Defendant Florida Supreme Court's vested interests and, given its unlimited power, a vehicle to (i) push  Defendant Florida Supreme  Court's political agenda and (ii) punish directly and indirectly any who oppose it.

As Mr. Justice Bradley said in *Boyd v. United States*, 116 U.S. 616  (1886):

> [I]llegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. . . It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*.[4]

Similarly, in *Olmstead v. United States*, 277 U.S. 438,  479 (1928) Justice Brandeis stated: "Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."

Granted power to regulate attorneys, Defendant Florida Supreme Court through its official "arm" has by "by silent approach and slight deviations" from the limited Article V, §15 grant of power for allegedly "beneficent" purposes, created a "danger to liberty" in the monolithic Defendant The Florida Bar.

Against this backdrop the actions of the Florida Bar in regards to the pending Article IX, §3 initiative of Florida J.A.I.L. 4 Judges is plainly extra-constitutional and thus must be enjoined by this Court as requested herein.

First, notice must be taken that apparently a paid staff person of Defendant The Florida Bar,

---

[4]     "resist the first encroachments".

Dana Watson, is spending her time – and thus the money of Defendant Florida Supreme Court's "arm" – investigating and working to oppose the Florida J.A.I.L. 4 Judges' initiative. Moreover, Ms. Watson's future activities are clearly expected to inflate as Florida J.A.I.L. 4 Judges expands its activities.[5]

Second, the Florida Bar News has already begun trumpeting Defendant The Florida Bar's *ex cathedra* determination as the January 15, 2007, headline clearly details.[6] What "fight" are the Florida attorney to be prepared for?

Last, the scope of the activities of Defendant The Florida Bar as evidenced by the four public articles attached to the Complaint, plainly do <u>not</u> disclose the full range of activities and resources being undertaken by Defendant The Florida Bar in opposition to Florida J.A.I.L. 4 Judges. Hence Plaintiff's request for expedited and limited discovery, *infra*.

In sum, the People never ceded to Defendant Florida Supreme Court the power to create an "arm" whose purpose has been expanded from simple regulation of the admission and discipline of attorneys to an organization which undertakes to oppose the exercise of the fundamental right to petition for redress of grievances as particularly authorized in Florida J.A.I.L. 4 Judges' constitutional initiative.

### 2. DEFENDANT THE FLORIDA BAR DISPARAGES THE RIGHT TO PETITION FOR REDRESS

Next, this Court must recognize that under Article I, § 5: "The people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances."

---

[5] "but Diner said, "Let's keep our eyes open on this and be as informed as we can be."

[6] *"Despite SD loss, J.A.I.L.4Judges targets Florida – Attorneys urged to be prepared for the fight"*

Likewise, under the Federal Constitution, First Amendment, "Congress shall make no law . . . prohibiting . . . the people . . . to petition the government for a redress of grievances." Thanks to the Acts of Reconstruction, 39 Cong. Ch. 153, §5, the First Amendment is now binding on Florida.

Against this right to petition, certain pole-stars are well known. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943).

As such, the government's attempts to prescribe orthodoxy have been restricted in three areas. First, the government may not abridge "equality of status in the field of ideas" by granting the use of public forums to those whose views it finds acceptable while denying their use to those with controversial views. *Police Department of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Here, through the mediums of its publications and its iron-grip on committee appointments[7], the *junta* of the Florida Bar has *de facto* reserved the "field of ideas" to itself, invoked *ad hominem* arguments against its adversaries[8], and banned any discussion contrary to its "orthodox" views.[9]

---

[7] "Before June 1 of each year, the president-elect shall appoint all committee members" Rules Regulating the Florida Bar, Rule 2-8.1

[8] "this is an effort to undermine the very foundation of our country and places at risk freedoms and liberties we have been so blessed to have."

[9] Moreover, the Florida Bar has more than just banned views, it has actively retaliating against any who would challenge its hegemony: *Cf.*: *The Florida Bar Re: Authority of a Voluntary Section to Engage in Legislative Action*, No. 79,321, Final Order (Fla. May 1, 1992): This case ensued after the Board of Governors of The Florida Bar prohibited the Public Interest Law Section of The Florida Bar from advocating the repeal of Florida's prohibition against adoptions by homosexuals. The board's action was premised on a belief that the issue would be divisive within the bar's membership at large.

Case 4:08-cv-00219-RH-WCS   Document 27-5   Filed 05/12/08   Page 7 of 14

Second, the government may <u>not</u> monopolize the "marketplace of ideas" thus drowning out private sources of speech. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390 (1969)("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail, rather than to **countenance monopolization of that market, whether it be by the Government itself or a private licensee**." (emphasis added)).

Here, just as there was a "scarcity of radio frequencies" in *Red Lion*, there is a analogous "scarcity" of frequency of communications to lawyers and the public which is being monopolized by Defendant The Florida Bar.  This fact is confirmed by the common sense notice this Court must take of the exorbitant cost to access the "marketplace of ideas" and the prestige, power and purse[10] that Defendant The Florida Bar brings to that "captured" and "controlled" marketplace – Florida's admitted lawyers and by far the largest representative group in the legislature.

Third, the government may not "compel persons to support candidates, parties, ideologies or causes that they are against." *Lathrop v. Donohue*, 367 U.S. 820, 873 (1961) (Black, J., dissenting).

Patently, Defendant Florida Supreme Court has articulated a theory which it surmises allows Defendant The Florida Bar to establish, maintain and supervise "a program for providing information and advice to the courts and all other branches of government concerning current law and proposed or contemplated changes in the law." Rules Regulating Fla. Bar 2–3.2(d)(4).  That articulation starts with *In re Florida Bar Board of Governors' Action*, 217 So.2d 323 (Fla. 1969)("it is not only the right but the duty of the Bar as a professional organization to make such evaluation

---

[10]    "The Florida Bar's 2003-2004 operating budget is $28.8 million. Membership fees account for 66 percent, or $19 million, of that amount."  Florida Bar Journal, September 1, 2003.

and advise the public of its conclusions")[11] through *Alper v. FL Bar* ,771 So.2d 523 (Fla. 2000)("because we hold that the Bar's activities, as alleged in the petition before us, are clearly within the parameters previously approved by this Court, we hereby deny the petition on the basis that it is facially insufficient for the granting of relief") and includes other cases.[12]

Notably in each of these cases – and the federal cases related thereto – the <u>sole</u> analysis undertaken was whether the challenged Florida Bar activity violated the right to free speech or to association; not to "petition". *Cf:   The Florida Bar re Frankel*  at 1297; *Alper* at 524.

Here, Plaintiff raises a <u>different</u> claim heretofore not addressed or adjudicated:  to wit, whether the political activities of Defendant The Florida Bar violate the right to petition upon the grounds discussed *supra*.

Indeed, the "right to petition" is one of the most underdeveloped bodies of both Florida and federal constitutional law.  Defendant Florida Supreme Court has made only generalized statements concerning this right[13], but, unlike other fundamental rights, has not ventured into an analysis of when such right is being abridged or chilled as Plaintiff alleges here.

As such, Plaintiff having now pried open Pandora's box, this Court must examine the scope

---

[11]    Although notably in making its studied "evaluation", the Florida Bar has not yet contacted Florida J.A.I.L. 4 Judges  to solicit their opinion before commencing its *jihad* against Florida J.A.I.L. 4 Judges .

[12]     *The Florida Bar*, 439 So.2d 213 (Fla. 1983),  *The Florida Bar re Schwarz*, 526 So.2d 56 (Fla. 1988),  *The Florida Bar Re. Amend. to Rule 2−9.3*, 526 So.2d 688 (Fla. 1988),  *The Florida Bar re Schwarz*, 552 So.2d 1094 (Fla. 1989), *cert. denied* 498 U.S. 951 (1990),  *The Florida Bar re Frankel*, 581 So.2d 1294 (Fla. 1991) and *The Florida Bar Re: Authority of a Voluntary Section to Engage in Legislative Action, No. 79,321, Final Order* (Fla. May 1, 1992).

[13]    "Given its constitutional underpinnings, the right to petition is inherent and absolute." *Krivanek v. Take Back Tampa Political Committee*, 625 So.2d 840, 843, (Fla. 1993) .

of permissible activities of Defendant The Florida Bar in light of their affect upon the fundamental, federal and Florida right to petition.

### 3. IT IS UNETHICAL FOR THE FLORIDA BAR TO ENGAGE IN POLITICAL ACTIVITY

Third, Canon 7A(3)(d)(ii) provides that a judge shall <u>not</u> make statements that commit or appear to commit him or her with respect to cases, controversies, or issues that are likely to come before the court. *See: In re Kinsey*, 842 So. 2d 77 (Fla. 2003).

Moreover, Cannon A.3.b states that all judges "shall prohibit employees and officials who serve at the pleasure of the candidate, and shall discourage other employees and officials subject to the candidate's direction and control from doing on the candidate's behalf what the candidate is prohibited from doing under the Sections of this Canon."

While perhaps technically directed to a judge campaigning for office, the sentiment embodies in the preamble to the Code of Judicial Conduct necessarily persuades that the restriction on political activity is properly expanded to include activity to influence public policy issues such as that raised by Florida J.A.I.L. 4 Judges.

> Our legal system is based on the principle that an **independent, fair and competent** judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law. Preamble, *Code of Judicial Conduct*, Adopted September 29, 1994, effective January 1, 1995 (643 So. 2d 1037)(As amended through January 5, 2006 (918 So. 2d 949)(Emphasis added.)

Turning then to Defendant The Florida Bar, it is obviously the official "arm" of Defendant

9

Case 4:08-cv-00219-RH-WCS Document 27-5 Filed 05/12/08 Page 10 of 14

Florida Supreme Court over which that Court enjoys complete authority.[14]  Additionally, the Florida J.A.I.L. 4 Judges initiative will come before Defendant Florida Supreme Court either directly through action of the Florida Constitution, Art. IV, §10 and Article V, § 3(b)(10) or indirectly as a challenge under the Florida J.A.I.L. 4 Judges initiative if enacted.  In either case, it would disqualify every member of that Court if political activity for or against the Florida J.A.I.L. 4 Judges 's initiative had been already publicly made by the Court's official "arm" – Defendant The Florida Bar.

Accordingly, for the "arm" to engage in political activity against the Florida J.A.I.L. 4 Judges' initiative that the Defendant Florida Supreme Court will hear is a *de facto* if not *de jure* violation of the fundamental right to an "independent, fair and competent judiciary" in whom we *trust* to judge matters fairly and impartially.

### 4.    THE FLORIDA BAR IS VIOLATING FLORIDA STATUTES, CHAPTER 106

Fourth, Florida Statute 106.011(1)(a)1.c  defines "Political committee" to include:

> A combination of two or more individuals, or a person[15] other than an individual, that, in an aggregate amount in excess of $500 during a single calendar year: . . . Makes expenditures[16] that expressly advocate

---

[14]    .  "Subject to the authority of the Supreme Court of Florida, the board of governors, as the governing body of The Florida Bar, shall be vested with exclusive power and authority to formulate, fix, determine, and adopt matters of policy concerning the activities, affairs, or organization of The Florida Bar." *Rules Regulating the Florida Bar*, 2-3.1.  "Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar." *Rules Regulating the Florida Bar*, 1-12.1.

[15]    "Person" means an individual or a corporation, association, firm, partnership, joint venture, joint stock company, club, organization, estate, trust, business trust, syndicate, or other combination of individuals having collective capacity. The term includes a political party, political committee, or committee of continuous existence.

[16]    "Expenditure means  . . .anything of value made for the purpose of influencing the results of an election."

the election or defeat of a candidate or the passage or defeat of an issue[17];

Moreover, each "political committee" is required to – as Florida J.A.I.L. 4 Judges properly has – register with the Division of Elections pursuant to §106.03.  A review of the Division's records by the undersign reveal <u>no</u> such registration by the Florida Bar.

"Unquestionably, the legislature intended that there be a public disclosure of persons who have organized to seek substantial contributions or make substantial expenditures for a political purpose. Thus, we hold that section 106.03 applies to those who anticipate obtaining contributions or making expenditures in excess of $500 in a calendar year and who are otherwise defined in section 106.011(1), even though such contributions have not yet been obtained or such expenditures have not yet been made." *State v. Greco*, 479 So.2d 786, 789 (Fla.App. 2 Dist. 1985).

Patently, Defendant The Florida Bar is in the process of organizing and expending Defendant The Florida Bar resources to "defeat" the "issue" proposed by Florida J.A.I.L. 4 Judges.  Indeed, at present it is known that Defendant The Florida Bar's Board of Governors has sought expert counsel – at presently unknown expense to Defendant The Florida Bar – on how to oppose Florida J.A.I.L. 4 Judges  and the importance of raising money to do so.[18]  Significantly, that expert counsel's advice

---

[17]  "Issue means any proposition which is required by the State Constitution, by law or resolution of the Legislature, or by the charter, ordinance, or resolution of any political subdivision of this state to be submitted to the electors for their approval or rejection at an election, or any proposition for which a petition is circulated in order to have such proposition placed on the ballot at any election."

[18]  "Tom Barnett, executive director of the State Bar of South Dakota, gave that advice to the Bar Board of Governors at its December meeting. Barnett led the campaign last year that resulted in the defeat of a J.A.I.L.4Judges initiative in South Dakota that wound up failing by an 89-to-11 percent margin. . . .He advised the Bar to begin preparing early for the potential campaign, and outlined how the anti-amendment campaign was waged in South Dakota. . . .'Start building coalitions today,' he said. 'Who uses the court system? Business. Who has the money to do appeals? Business. Tell them this will hurt the court system.'"

included raising money from the only group that can afford to do appeals – "businesses".[19]

Accordingly, this Court must act to enjoin Defendant The Florida Bar from engaging in opposition to J.A.I.L. until it has complied with the registration requirements of Chapter 106.

In sum, there is a substantial likelihood that Plaintiff will ultimately prevail upon the merits of each, if not all , of its four claim that Defendant The Florida Bar is engaging in improper political activity.

### B. PLAINTIFF WILL SUFFER IRREPARABLE INJURY UNLESS THE INJUNCTION ISSUES

The second prerequisite for entry of a temporary restraining order and injunction is "irreparable injury". Plaintiff has and will continue to suffer irreparable injury if the temporary injunction is not entered as its fundamental right to petition is being chilled by the activities of Defendant The Florida Bar.

It is worthy to note that the Supreme Court has held that even a minimal infringement upon First Amendment rights constitutes irreparable injury sufficient to justify injunctive relief. *Elrod v. Burns*, 427 U.S. 347 (1976).

### C. THE THREATENED INJURY TO PLAINTIFF OUTWEIGHS WHATEVER DAMAGE THE PROPOSED INJUNCTION MAY CAUSE TO THE OPPOSING PARTY

Here, the "opposing party" is the Defendants The Florida Bar, Florida Supreme Court and Justices. None of these entities or individuals would be injured by the relief sought herein: staying

---

[19] A candid observation which ought to make this Court pause in its deliberations to consider the implications: Defendant Florida Supreme Court's arm is hearing advice to on how to fight a citizen initiative and is hearing: "Who has the money to do appeals? Business. Tell them this will hurt the court system." Such an un-holy alliance between big business and that Court's "arm" should cause every patriot/lawyer in this state to shudder for the same reason King John was put to the Sword at Runnymede.

Case 4:08-cv-00219-RH-WCS Document 27-5 Filed 05/12/08 Page 13 of 14

of Defendant The Florida Bar engaging in improper political activity until the merits of this matter are determined.

### D. THAT THE INJUNCTION, IF ISSUED, WOULD NOT BE ADVERSE TO THE PUBLIC INTEREST

Finally, not only would such an injunction "not be adverse to the public interest", quite the contrary is true. Indeed, the holding in *Mitchum v. Foster*, 407 U.S. 225, 240 (1972), is instructive:

> Congress enacted §1983 and its predecessor, § 2 of the Civil Rights Act of 1866, 14 Stat. 27, to provide an independent avenue for protection of federal constitutional rights. The remedy was considered necessary because '**state courts were being used to harass and injure individuals, either because the state courts** were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights**." (Emphasis added).

In sum, Defendant Florida Supreme Court – through its official "arm" Defendant The Florida Bar – is being used to interfere with the fundamental right to petition and therefore is involved in an abrogation of federally protected rights". As noted by the court in *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 641 (1943):

> There is no mysticism in the American concept of the State or of the nature or origin of its authority. We set up government by consent of the governed, and the Bill of Rights denies those in power any legal opportunity to coerce that consent. Authority here is to be controlled by public opinion, not public opinion by authority.

Here, the state – in the guise of the "official arm" of the Defendant Florida Supreme Court – is attempting to control "public opinion" over the political question of the "authority" of the people to change their judicial system in a manner that authority opposes. Such a result is expressly prohibited by the First Amendment as enunciated in *Barnette*. As such, this Court must act to stop this infringement on and chilling of the First Amendment rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter an injunction enjoining

Defendant The Florida Bar to halt any activities related to Plaintiff's "The Judicial Accountability Law" .

### III.    EXPEDITED LIMITED DISCOVERY

Given that time is of the essence as Defendant The Florida Bar is apparently actively involved in anti-Florida J.A.I.L. 4 Judges  activity, delay by this Court in resolving this Complaint will  cause irreparable harm and thus justifies the limited discovery requested *infra*.  The burden on Defendant The Florida Bar to expeditiously reveal what it is engaging in regarding Florida J.A.I.L. 4 Judges  is small as the request below is limited in scope.

WHEREFORE, Plaintiff requests that the Defendant The Florida Bar be directed to provide to Plaintiff within two (2) weeks:

1.    A one-hour telephone deposition of Dana Watson, a legislative aide with Defendant The Florida Bar;

2.    Minutes and recordings of all meetings when Tom Barnett, executive director of the State Bar of South Dakota, gave advice to The Defendant Florida Bar Board of Governors;

3.    Copies of all email by Florida Staff persons related to Florida J.A.I.L. 4 Judges;

4.    Copies of all minutes and recordings of Defendant The Florida Bar's Judicial Independence Committee meeting held on February 15, 2007, and any subsequent meeting.

February 29, 2008                                    **MONTGOMERY BLAIR SIBLEY**
                                                    *Attorney for Plaintiff*
                                                    50 West Montgomery Ave., Suite B-4
                                                    Rockville,  Maryland 20850-4216
                                                    (301) 251-5200 (Voice)
                                                    (202) 478-0371 (Telefax)


                                        By:    /s/ *Montgomery Blair Sibley*
                                                    Montgomery Blair Sibley
                                                    Fla. Bar No.: 725730

14